1
2
3
4
5
6
7        **UNITED STATES DISTRICT COURT**
8        **EASTERN DISTRICT OF CALIFORNIA**
9
10

| | |
|---|---|
| UTAH CHARLES KOON, | Case No. 1:11-cv-00131-BAM-HC |
|     Petitioner, | ORDER DENYING PETITIONER'S MOTIONS FOR LEAVE TO FILE AN AMENDED PETITION (DOC. 24) AND FOR AN EVIDENTIARY HEARING (DOC. 38) |
|   v. | ORDER DENYING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOCS. 1, 8) |
| R. E. BARNES, | ORDER DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on February 4, 2011, and on behalf of Respondent on August 17, 2011.

In addition to Petitioner's first amended petition, there is pending before the Court Petitioner's motion to amend the petition, which was filed on February 24, 2014.  Respondent filed opposition to the motion on April 2, 2014, and Petitioner filed a reply, styled as a traverse, on May 14, 2014.

## I.  Background

Petitioner was convicted on September 23, 2008, in the Kings County Superior Court (KCSC) and filed an appeal from the judgment in the California Court of Appeal, Fifth Appellate District (CCA), in which Petitioner raised instructional error.  The judgment was affirmed on December 1, 2009.  (LD 4.)[1]  The California Supreme Court (CSC) summarily denied Petitioner's petition for review on February 10, 2010.  (LD 6.)

Petitioner then sought state court remedies with respect to a claim that the evidence was insufficient to support the conviction.  On January 14, 2010, Petitioner filed a petition for writ of habeas corpus in the CCA in which Petitioner raised the insufficiency of the evidence; the petition was denied on January 21, 2010, in an order which stated that Petitioner had failed to exhaust his remedy of seeking relief in the trial court before filing in the appellate court, and further that the sufficiency of the evidence is generally not cognizable on habeas corpus.  (LD 7, 7A.)

Petitioner next raised the sufficiency of the evidence in a petition filed in the KCSC. That petition was denied on March 26, 2010.  The order stated that Petitioner had not shown that his appellate counsel had been ineffective in advising Petitioner to raise the issue on habeas corpus, because in light of the petition

---

[1] "LD" refers to documents lodged by Respondent.

and the record from the criminal case, Petitioner had failed to show that there was a reasonable probability that but for counsel's omission, the result would have been more favorable to Petitioner. (LD 8A.)

Petitioner raised the issue before the CSC in a petition filed on April 22, 2010, which was denied on November 10, 2010, with citations to In re Dixon, 41 Cal.2d 756 (1953) and In re Lindley, 29 Cal.2d 709 (1947).  (LD 9, LD 10.)

On January 11, 2011, in the instant action, Petitioner filed a petition for writ of habeas corpus in which he alleged that he was a state prisoner serving an eight-year sentence for theft and receiving stolen property imposed by the KCSC in case number 08CM0270.  (Pet., doc. 1, 1.)  Petitioner alleged three claims in the petition: 1) appellate counsel was ineffective for failing to raise on appeal the insufficiency of the evidence to support Petitioner's convictions; 2) an erroneous jury instruction concerning motive, which permitted consideration of unemployment and poverty as evidence tending to show guilt, violated his rights to due process of law and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments; and 3) the evidence was insufficient to support his convictions, and thus Petitioner suffered a violation of due process of law.  (Id. at 4-5.)  It appeared that Petitioner had exhausted state court remedies as to his second and third claims but not as to the first claim concerning ineffective assistance of counsel.

On February 11, 2011, the Court ordered Petitioner to show cause why the petition should not be dismissed as a "mixed" petition containing both exhausted and unexhausted claims.  Petitioner

3

responded by admitting that his claim concerning the allegedly
ineffective assistance of counsel (IAC) was unexhausted, and moving
to amend the petition to withdraw the IAC claim.  On July 27, 2011,
the Court granted the motion and directed that the action proceed on
the petition as amended to include only the second and third claims.
Respondent filed an answer to the first amended petition on October
28, 2011.  Petitioner filed a traverse on November 16, 2011.

It was not until July 10, 2013, in a petition filed in the
KCSC, that Petitioner first sought state court remedies for the IAC
claims that he now seeks to add to the petition in the motion
pending before the Court.  (Doc. 24, 45.)  The KCSC denied the
petition on August 19, 2013, because Petitioner had failed to
explain the delay in raising the IAC claims, which had extended for
over four years after his conviction.  The KCSC noted that
Petitioner's appellate counsel had told Petitioner on February 24,
2009, that no evidence of IAC could be found in the appellate
record, yet Petitioner had failed to justify his delay in raising
IAC on habeas corpus.  The court cited In re Robbins, 18 Cal.4th
770, 780 (1998).  (Doc. 24, 45.)

Petitioner filed a habeas petition raising the IAC claim in the
CSC on October 15, 2013, which the court denied on January 15, 2014,
citing In re Robbins, 18 Cal.4th 770, 780 (1998), and In re Clark, 5
Cal.4th 750, 767-69 (1993).  (Id. at 49.)

In summary, with respect to the present proceeding, Petitioner
had withdrawn the IAC claim, and the case had long been ready for
decision on the remaining two claims when Petitioner filed the
motion for leave to amend that is presently before the Court.

In the motion for leave to amend, Petitioner seeks to add the

4

following claims to the petition: 1) Petitioner was wholly denied

counsel and was denied the effective assistance of counsel when his

trial counsel omitted to provide expert testimony concerning

footprints and DNA evidence and failed on cross-examination to

impeach two witnesses, and 2) Petitioner was wholly denied counsel

when his trial counsel spent only six minutes with Petitioner before

trial and thus failed adequately to communicate with Petitioner and

to investigate the evidence and the defense case.  (Mot., doc. 24 at

4, 13.)

    Respondent opposes the motion on the ground that amendment of

the petition would be futile because the new IAC claims would be

barred by the statute of limitations.  Petitioner contends that he

was diligent and was prevented by extraordinary circumstances from

filing a timely petition; thus, he is entitled to equitable tolling

of the statute of limitations.

    II.  Motion for Leave to File a Second Amended Petition

    Preliminarily, the Court notes Respondent's contention that by

filing an amended petition in which he stated only two new IAC

claims and omitted any statement of the previously pending and fully

briefed claims of instructional error and insufficiency of the

evidence, Petitioner intended to withdraw the two earlier claims.

It is true that Local Rule 220 provides that unless prior approval

to the contrary is obtained from the Court, every pleading as to

which an amendment or supplement is permitted shall be retyped or

rewritten and filed so that it is complete in itself without

reference to the prior or superseded pleading.[2]  However, the Court

---

    [2] Further, if a party does amend a pleading, the general rule is that the new
pleading supersedes the original pleading, so the newly filed pleading must be

will not enforce the rule strictly against Petitioner, particularly in light of the Court's previous decision to permit Petitioner to withdraw an unexhausted claim without filing an entirely new petition.

Accordingly, the Court will consider Petitioner's pleading to constitute a motion for leave to file a second amended petition in which Petitioner sets forth not only the two previously briefed claims, but also the new IAC claims.  Further, with respect to timeliness, the Court will consider whether the new claims would relate back to the original claims.

A.   Further Amendment of the Petition

A petition for a writ of habeas corpus may be amended or supplemented as provided in the rules of procedure applicable to civil actions to the extent that the civil rules are not inconsistent with any statutory provisions or the rules governing section 2254 cases.  28 U.S.C. § 2242; Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules).  Fed. R. Civ. P. 15(a) may be used to permit the petitioner to amend the petition.  Withrow v. Williams, 507 U.S. 680, 696 n.7 (1993).

Fed. R. Civ. P. 15(a) provides with respect to amendments before trial that a party may amend its pleading once as a matter of course within twenty-one days after service of the pleading, a

complete and stand on its own.  Absent prior court approval, Local Rule 220 requires that an amended pleading be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint, which no longer serves any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Therefore, in an amended pleading, as in an original pleading, each claim or ground must be sufficiently alleged.

required responsive pleading, or a motion under Rule 12(b), (e), or (f), whichever is earlier; in all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave.  Further, the Court should freely give leave when justice so requires.

Factors to be considered when ruling on a motion to amend a habeas corpus petition include bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether or not the party has previously amended his pleadings.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  Amendment may be disallowed if the amendment would be futile, such as where the amended matter is duplicative or patently frivolous, or where the pleading presents no new facts but only new theories and provides no satisfactory explanation for failure to fully develop the contentions originally.  Ibid.  Further, amendment may be prohibited in order to avoid a court's having to entertain piecemeal litigation or collateral proceedings advanced with a purpose to vex, harass, or delay.  Franklin v. Murphy, 745 F.2d 1221, 1235-1236 (9th Cir. 1984).

### B.   Futility due to Untimeliness

Respondent contends that the amendment should not be allowed because the claims Petitioner seeks to add to the petition are untimely.  Petitioner argues that the new claims relate back to earlier claims and thus are not untimely; further, Petitioner contends that he is entitled to equitable tolling of the statute of limitations.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

7

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of –

(A) the date on which the judgment became final
by the conclusion of direct review or the expiration of
the time for seeking such review;

(B) the date on which the impediment to filing an
application created by State action in violation of the
Constitution or laws of the United States is removed, if
the applicant was prevented from filing by such State
action;

(C) the date on which the constitutional right
asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court
and made retroactively appicable to cases on collateral
review; or

(D) the date on which the factual predicate of the claim
or claims presented could have been discovered through the
exercise of due diligence.

(2) The time during which a properly filed application for
State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation
under this subsection.

28 U.S.C. § 2244(d).

Here, under § 2244(d)(1), the judgment became final either upon

the conclusion of direct review or the expiration of the time for

seeking such review in the highest court from which review could be

sought.  Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).

Neither party has indicated that Petitioner sought certiorari from

the United States Supreme Court.  After the CSC's denial of the

petition for review on February 10, 2010, the ninety-day period for

seeking certiorari from the United States Supreme Court expired on

May 11, 2010.  Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox,

8

159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)); Supreme Court Rule 13; Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).  The one-year statute of limitations commenced running on the following day, May 12, 2010.  Fed. R. Civ. P. 6(a); see Waldrip v. Hall, 548 F.3d 729, 735 n.2 (9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  The statutory limitations period expired one year later on May 11, 2011.  Thus, without any tolling or relation back, Petitioner's new claims brought to federal court in February 2014 would be barred by § 2244(d).

     C.  Statutory Tolling

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'- i.e., 'until the completion of' that process." Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California, this generally means that the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge, as long as the petitioner did not "unreasonably delay" in seeking review.  Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Here, all of Petitioner's state habeas petitions were filed

9

before the judgment became final; however, one petition, namely, the petition filed in the CSC on April 22, 2010, was pending at the time the statute began running on May 12, 2010, and thus tolled the running of the statute for 202 days through November 10, 2010, the date the CSC denied the petition.

Accordingly, the one-year period began to run the next day on November 11, 2010, and expired on year later on November 10, 2011. Under this analysis, Petitioner's new IAC claims are untimely.

D.   Equitable Tolling

Petitioner argues that a combination of circumstances, including limited education and literacy, limitations on access to the law library, a learning disability (dyslexia), and his appointed appellate counsel's failure to raise his IAC claims on appeal or by writ constituted extraordinary circumstances beyond his control that prevented him from filing his IAC claims in a timely manner.

The one-year limitation period of § 2244 is subject to equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition. Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560, 2562 (2010). Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted. Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Conclusional allegations are generally inadequate. Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009). Cases suggest that the untimeliness must result from an external force and not

10

mere oversight, miscalculation, or negligence on the petitioner's

part.  See Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011);

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009).

The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied.  Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005).  Where there are multiple extraordinary circumstances alleged to have prevented a prisoner from filing a timely petition, the petitioner need not show that each circumstance independently prevented a timely filing; rather, it is sufficient to show that the two circumstances together rendered a timely filing impossible. Ramirez v. Yates, 571 F.3d 993, 1000 (9th Cir. 2009).

Petitioner describes himself as illiterate, unable to spell, and beset with unspecified problems with his writing.  He alleges that although his grade level was 4.4, through hard work a level of 9.6 has been achieved.  A form of the California Board of Prison Terms for requesting parole assistance dated August 2008 reflects that his file reflected no mental, developmental, or physical disabilities but a reading level of 4.6; Petitioner indicated that he could not see and needed help reading his documents.  A test of adult basic education (T.A.B.E.) taken in January 2009 reflected a reading score of 8.4.  Petitioner alleges that he must use a dictionary and his common sense, which, with study, resulted over

much time in his learning to prepare the proposed habeas petition. (Doc. 24 at 33, 53-54.)

Petitioner alleges that at an unspecified time while confined at Ben Lomond Conservation Camp, he could visit the law library only once a month. (Doc. 24, 33.) The docket reflects that on May 21, 2011, Petitioner filed a notice of change of address to the Ben Lomond facility from his previous address at Susanville. (Doc. 7.) Further, Petitioner alleges that the law library was closed half of an unspecified period of time. (Doc. 24, 33.)

Although Petitioner may have a learning disability, the record reflects that Petitioner's reading level was 8.4 in 2009 and that Petitioner was able to prepare and submit numerous habeas petitions in the state courts in 2010 and 2011, and again in 2013. In this regard, Petitioner has not shown how any extraordinary circumstance prevented or interfered with his ability to submit his claims to various courts during the pertinent time period.

Insofar as Petitioner relies on his ignorance of the law and his status as a pro se litigant operating from prison with limited resources, Petitioner's pro se status is not an extraordinary circumstance. Chaffer v. Prosper, 592 U.S. 1046, 1049 (9th Cir. 2010). A pro se petitioner's confusion or ignorance of the law is not alone a circumstance warranting equitable tolling. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

Likewise, limitations on law library access and research materials are not extraordinary, but rather are normal conditions of prison life. Chaffer v. Prosper, 592 F.3d at 1049. Further, Petitioner has not shown how any specific instance of allegedly inadequate access or materials caused him to be unable to

12

file a timely petition.

Petitioner alleges that if he had not relied on his appointed appellate counsel, he would have filed a petition much sooner. (Doc. 24, 33.)  The KCSC's order denying Petitioner's habeas claims of IAC found that on February 24, 2009, Petitioner's appointed appellate counsel had informed him that she had found no evidence of ineffective assistance of counsel in the appellate record.  A copy of a page of what appears to have been correspondence of that date with Petitioner regarding the case reflects counsel's statement that she found no IAC in the record of the case.  (Doc. 24, 45-46.)

Although Petitioner appears to contend that appellate counsel was ineffective, Petitioner has not made a showing that would support such a finding.  To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984).

Here, appellate counsel's failure to raise the ineffective assistance of counsel on appeal has not been shown to have been unreasonable or substandard.  A summary of the evidence that relates to the merits of the petition will follow, and it will show that there was strong circumstantial evidence of Petitioner's guilt of theft, including the statement of Petitioner's girlfriend made to a deputy after the arrest that she had seen Petitioner and his co-

13

defendant, a scrap metal dealer, unloading the stolen ladders in the driveway; the presence in the driveway not only of the ladders but also of a milk can and tools belonging to the owner of the ladders; Petitioner's presence where the stolen ladders were found; and shoe tracks at the location where the ladders were taken that were strikingly similar, with respect to size, logos, and tread patterns, to a pair of Nike running shoes that were seized from Petitioner at the scene of his arrest. (LD 4.) Petitioner has not shown or even suggested how an expert regarding the physical evidence could have provided or supported any defense. The impeachment that Petitioner faults trial counsel for having omitted related to factual matters that were largely immaterial. Petitioner has not set forth any evidence or additional factual matter that shows that any item of exculpatory or favorable evidence, consequential impeachment, or viable defense was omitted.

Further, it clearly appears that Petitioner was not abandoned by appellate counsel; rather, appellate counsel simply found nothing in the appellate record upon which to base a claim of ineffective assistance of counsel in the direct appeal. Simply because Petitioner alleges that his defense was that he was not present at the offense is not a basis for concluding that counsel was ineffective here.

Attorney negligence is generally not a sufficient basis for applying equitable tolling to the § 2244(d)(1) limitation period, although attorney misconduct that is sufficiently egregious to meet the extraordinary misconduct standard can be a basis for applying equitable tolling. Holland v. Florida, 130 S.Ct. at 2563-64; Porter v. Ollison, 620 F.3d 952, 959-60 (9th Cir. 2010); Spitsyn v. Moore,

345 F.3d 796, 800-01 (9th Cir. 2003).  Here, Petitioner has not shown conduct on the part of counsel that fell below an objective standard of reasonableness, let alone constituted egregious misconduct.

To the extent that Petitioner had a disagreement with counsel during the direct appeal, it does not serve to explain any of Petitioner's later delay in filing collateral challenges in the course of exhausting state court remedies as to the new IAC claims.

In summary, Petitioner has not shown how he suffered any extraordinary circumstance with respect to the advice of his appointed appellate counsel.

In addition to the absence of facts indicating extraordinary circumstances, Petitioner's motion lacks facts warranting a conclusion that Petitioner was diligent.  The diligence required for equitable tolling is reasonable diligence, not "maximum feasible diligence."  Holland v. Florida, 130 S.Ct. at 2565.  However, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  Spitsyn v. Moore, 345 F.3d at 799 (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  A petitioner seeking equitable tolling must demonstrate reasonable diligence while exhausting state court remedies as well as while attempting to file a federal petition during the period after the extraordinary circumstances began.  Roy v. Lampert, 465 F.3d 964, 971 (9th Cir. 2006).  The effort required is what a reasonable person might be expected to deliver under his or her particular circumstances.  Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011).  Because a pro se petitioner's habeas filings must be construed with deference, a court will construe liberally such a

petitioner's allegations regarding diligence.  <u>Roy v. Lampert</u>, 465
F.3d at 970.

Here, Petitioner's new IAC claims arise from omissions of trial
counsel that Petitioner alleges were unreasonable and substandard,
including 1) counsel's failure to have the shoe print evidence
examined by an expert, to have such an expert testify, and failure
to test for and present expert evidence regarding DNA; 2) counsel's
failure to impeach a deputy who testified inconsistently regarding
the location of the ladders that he observed when he was at the site
where the ladders were discovered and Petitioner was arrested
(either on a trailer [preliminary hearing testimony] or on the
ground [trial testimony]); 3) counsel's failure to impeach the owner
of the ladders whose testimony was inconsistent or uncertain
regarding when he noticed that some of the ladders had been moved;
and 4) counsel's failure to communicate with Petitioner adequately
before trial regarding the evidence and the defenses.  (Doc. 24, 25-
28.)  Petitioner admits that he discovered these claims by reviewing
the reporter's transcripts and performing research.  (<u>Id.</u> at 21.)
The record thus warrants a conclusion that all of counsel's failures
would have been known to Petitioner at the time of the trial because
Petitioner was present at the preliminary hearing and the trial.

After Petitioner's conviction in 2008 and affirmance of the
judgment in December 2009, Petitioner proceeded directly to file
habeas petitions in the California courts.  He began in January 2010
with respect to the claim regarding insufficiency of the evidence,
which he presented in four petitions to three different courts
between January 2010 and April 2010.  After the last state petition
was denied in early November 2010, it took Petitioner only two

16

months to file the federal petition in the instant action.  The petition as originally filed contained an unexhausted IAC claim regarding appellate counsel's failure to raise the insufficiency of the evidence, and the Court notified Petitioner of the consequences of proceeding with an unexhausted claim in its order to show cause that issued in early February 2011.  However, it was not until July 2013 that Petitioner finally sought habeas relief in the state courts with respect to the allegedly ineffective assistance of trial counsel, and not until February 2014 that Petitioner sought to raise these IAC claims here.  The record demonstrates repeated unexplained, lengthy delays which warrant a conclusion that Petitioner did not proceed with reasonable diligence.

In summary, the record and allegations before the Court do not reflect facts that would entitle Petitioner to equitable tolling of the limitations period.

### E.   Actual Innocence

Petitioner argues that his new claims would not be futile because any untimeliness would be superseded by Petitioner's claim of actual innocence.  Petitioner asserts that unspecified evidence was not obtained that would establish his actual innocence; further, the reliability of the evidence of guilt is in doubt.  (Doc. 24 at 9, 11, 35.)  Petitioner mentions as support for his actual innocence a lack of fingerprints on a pie box of a type found at both the scene of the theft and the scene of Petitioner's apprehension as well as an absence of fingerprints on other items; the failure to take and test soil samples at the scene of the theft, presumably to compare with soil found on Petitioner's shoes; and a failure to test or compare the shoe impressions with Petitioner's shoes.  (Doc. 35,

1  22.)

2       In McQuiggin v. Perkins, 569 U.S. -, 133 S.Ct. 1924, 1931-34

3  (2013), the Court held that a petitioner who had not shown

4  extraordinary circumstances and reasonable diligence to warrant

5  equitable tolling could nevertheless attempt to qualify for an

6  equitable exception to the statute of limitations set forth in 28

7  U.S.C. § 2244(d) based on actual innocence as a form of miscarriage

8  of justice.  A petitioner does not meet the threshold requirement of

9  showing actual innocence as an equitable exception to the statute of

10 limitations unless he persuades the district court that new evidence

11 shows that it is more likely than not no reasonable juror would have

12 convicted the petitioner.  That is, no juror, acting reasonably,

13 would have voted to find him guilty beyond a reasonable doubt.  Id.

14 at 1935.

15      The timing of the petition is a factor bearing on the

16 reliability of the evidence purporting to show actual innocence.

17 Id. at 1934-36.  As a gateway, unjustifiable delay does not

18 absolutely bar relief, but rather is a factor in determining whether

19 the petitioner has made the requisite showing of actual innocence.

20 A court may consider how the timing of the submission and the likely

21 credibility of a petitioner's affiants bear on the probable

22 reliability of the evidence of actual innocence.  Id.

23      The gateway should open only when a petition presents "evidence

24 of innocence so strong that a court cannot have confidence in the

25 outcome of the trial unless the court is also satisfied that the

26 trial was free of non-harmless constitutional error."  Id. at 1936.

27 This gateway is consistent with the rationale underlying the

28 miscarriage of justice exception, namely, ensuring that federal

1  constitutional errors do not result in the incarceration of innocent
2  persons.  Id.

3      Here, even if there were no fingerprints of Petitioner on any
4  of the items stolen from the victim, and even if there were no
5  similarity between any soil on Petitioner's shoes and that at the
6  scene of the theft, it would not preclude the trier of fact from
7  relying on a testifying law enforcement officer's testimony
8  concerning the details of the characteristics of the shoes and the
9  tracks.  Further, it would not preclude a reasonable juror from
10 concluding that Petitioner was guilty of the theft.  A reasonable
11 juror could conclude that Petitioner committed the theft because of
12 the evidence that Petitioner unloaded the stolen ladders and was
13 found in their vicinity.

14     The Court concludes that Petitioner is not entitled to the
15 benefit of the actual innocence exception to the statute of
16 limitations.

17          F.  Relation Back of the New Claims

18     Respondent and Petitioner disagree as to whether the
19 Petitioner's untimely claims relate back to the claims filed in the
20 original petition.

21     An amendment to a pleading relates back to the date of the
22 original pleading when 1) the law that provides the applicable
23 statute of limitations allows relation back, 2) the amendment
24 asserts a claim or defense that arose out of the conduct,
25 transaction, or occurrence set out, or attempted to be set out, in
26 the original pleading, or 3) the amendment changes the party or
27 naming of a party under specified circumstances.  Fed. R. Civ. P.
28 15(c)(1).  In a habeas corpus case, the "original pleading" referred

to in Rule 15 is the petition.  <u>Mayle v. Felix</u>, 545 U.S. 644, 655

(2004).  A habeas petition differs from a complaint in an ordinary

civil case, however, because although notice pleading is sufficient

in ordinary civil cases, it fails to meet the requirements of Habeas

Rule 2(c), which requires that a habeas petition specify all the

grounds for relief available to the petitioner and state the facts

supporting each ground.  <u>Mayle v. Felix</u>, 545 U.S. at 655.

Relation back is appropriate in habeas cases where the original

and amended petitions state claims that are tied to a common core of

operative facts.  <u>Mayle</u>, 545 U.S. at 664.  The claims added by

amendment must arise from the same core facts as the timely filed

claims and must depend upon events not separate in "both time and

type" from the originally raised episodes.  <u>Mayle</u>, 545 U.S. at 657.

Thus, the terms "conduct, transaction, or occurrence" in Fed. R.

Civ. P. 15(c)(1)(B) are not interpreted so broadly that it is

sufficient that a claim first asserted in an amended petition simply

stems from the same trial, conviction, or sentence that was the

subject of a claim in an original petition.  <u>Mayle v. Felix</u>, 545

U.S. at 656-57.  In <u>Mayle</u>, the Court concluded that the petitioner's

pretrial statements, which were the subject of an amended petition,

were separate in time and type from a witness's videotaped

statements, which occurred at a different time and place and were

the basis of a claim in the original petition.  Thus, relation back

was not appropriate.  <u>Mayle</u>, 545 U.S. at 657, 659-60.

Here, the new IAC claims relate to counsel's investigation and

handling of the trial; the claims properly filed in the original

petition relate to alleged trial court error in instructing the jury

and the overall insufficiency of the evidence.  The new claims are

based on events that are different in both time and type from the
originally raised claims.  Although both the new claims and the
original claims relate to proceedings before the jury, this is not a
sufficient relationship to permit relation back.  Cf. Hebner v.
McGrath, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (holding that a
claim concerning jury instructions that allegedly lowered the burden
of proof did not relate back to a claim concerning the admissibility
of evidence).

Accordingly, the Court concludes that Petitioner's new claims,
which are untimely, do not relate back to the claims in the original
petition.  Therefore, permitting amendment to include the new IAC
claims would be futile because they are untimely.

In summary, in accordance with the foregoing analysis, the
Court will deny Petitioner's motion for leave to file an amended
petition.

III.   Jurisdiction to Consider the Merits of the Petition

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v.
Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002,
1004 (9th Cir. 1999).

The challenged judgment was rendered by the KCSC, which is
located within the territorial jurisdiction of this Court.  28
U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims
that in the course of the proceedings resulting in his conviction,
he suffered violations of his constitutional rights.

Accordingly, the Court concludes that it has jurisdiction over
the subject matter of the action pursuant to 28 U.S.C. §§ 2254(a)

and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent R. E. Barnes, Warden of the California Correctional Center at Susanville, who, pursuant to the judgment, had custody of Petitioner at the California State Prison at Los Angeles County, his institution of confinement at the time the petition and answer were filed.  (Doc. 17.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  The fact that Petitioner was transferred to the Ben Lomond camp after the petition was filed does not affect this Court's jurisdiction; jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change. <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990) (<u>citing</u> <u>Smith v. Campbell</u>, 450 F.2d 829, 834 (9th Cir. 1971)).

Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.

IV.  <u>Factual Summary</u>

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the

petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the CCA in People v. Utah Charles Koon, case number 0F056153, filed on December 1, 2009.

### *FACTUAL AND PROCEDURAL HISTORIES*

Kings County Deputy Sheriff Daren Sweeney was on patrol in Hanford when he spotted 12 metal ladders in Harvey William Jones's front yard. Jones was Koon's codefendant in this case. Next to the ladders were a power drill, some other tools, a milk can, and a trailer. In front of the house was a black Chevrolet Blazer belonging to Traci Ann Kokko, another codefendant.

Deputy Sweeney knew that Jones dealt in scrap metal and was not involved with farming, and that farm equipment was often stolen and sold as scrap in the county, so he stopped to investigate. A woman known as Boo-Koo was in the driveway and told Sweeney that Jones was in the back yard. Sweeney went there and found Jones and Kokko. He asked Jones if the tools he saw were the kind used to dismantle ladders. Jones said yes. Deputy Sweeney asked for permission to search the yard for more people. Jones gave permission. The deputy found Koon in the yard. Later, he seized the shoes of Kokko and Koon. Kokko's were K-Swiss tennis shoes and Koon's were Nike Air running shoes.

Some of the ladders had "Warmerdam Orchards" written on them, so the Sheriff's Department contacted a farmer named Nick Warmerdam. He identified the ladders; some were his and others belonged to contractors of his. They had disappeared from a trailer on his property. The milk can and some of the tools in the driveway were also his. He said the ladders were worth about $100 dollars each but would cost $140 to $150 to replace, and the tools were worth about $35 or $40.

23

Sergeant Steven Fry went to Warmerdam's farm and inspected the area around the trailer from which the ladders had been taken. He found shoe prints in the dirt that matched the soles of Koon's and Kokko's shoes with respect to size, logos, tread patterns and other details. He also found a blueberry pie box from Wal-Mart that was just like a blueberry pie box found in Kokko's Blazer. Tire tracks of the same width and tread pattern as the tires on the Blazer were also found near the trailer from which the ladders had been taken.

The district attorney filed an information charging Koon, Kokko, and Jones with grand theft (Pen.Code, § 487, subd. (a)) and receiving stolen property (Pen.Code, § 496, subd. (a)). For sentence-enhancement purposes, the information alleged that Koon had a prior strike offense and had served two prior prison terms.

Koon did not testify at trial. Kokko testified that she was at Jones's house early in the morning of the day in question. A scruffy-looking man named Don, whom she had never seen before, came to the house and offered her $50 to borrow the Blazer to pick up scrap metal. On Jones's recommendation, Kokko agreed, as she was unemployed and "pretty broke." She saw Don drive the Blazer away with a trailer attached. Then she went to sleep with Koon, who was her boyfriend. At some point while she was asleep, Koon left the house. After an hour or two, Don returned with the Blazer and the trailer. Awakened by the noise, Kokko went out to check on the Blazer. She saw the ladders on the ground. Don and Jones were arguing about whether the ladders were scrap metal. Don left in a huff. Kokko, Jones, and Koon (who had returned) went inside and were having coffee when Sweeney arrived. Nervous because the ladders were not scrap metal, Kokko and Jones went to the back yard to look for Don. He was not there, never paid the $50, and was never seen again.

Kokko testified that she had known Koon for about two months at the time. He did not have a job during that time. She had known Jones for four or five years. He also was unemployed all that time, except for odd jobs and recycling scrap metal.

Deputy Sweeney testified that Kokko told him she saw Koon and Jones unloading the ladders in the driveway. Kokko

24

testified that she did not recall seeing that or telling the deputy about it.

(LD 4, 2-4.)

V.   Standard of Decision and Scope of Review

Petitioner argues that he suffered a denial of due process of law in connection with the trial court's jury instructions on the jury's consideration of Petitioner's lack of employment at the time of the crime as a motive for theft.

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or

25

concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.  In order to obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." Id. at 786-87. The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.

Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the

evidence presented in the state proceedings.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

VI.   <u>Instructional Error</u>

Petitioner argues that the instruction given on motive unfairly permitted the trier of fact to infer that his employment status and poverty gave him a motive for the crime.

Here, the last reasoned decision on Petitioner's claim of instructional error was the decision of the CCA.

A.   <u>The State Court Decision</u>

In affirming the judgment, the CCA reviewed the pertinent procedural history of Petitioner's claim of instructional error and opined as follows:

> The presentation of evidence concluded and the court instructed the jury. On its own motion, it included an instruction in accordance with Judicial Council of California Criminal Jury Instructions (2007-2008) (CALCRIM) No. 370 on motive:
>
> > "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. In reaching your verdict, you may[,] however, consider whether a defendant had a motive.
> >
> > "Having a motive may be a factor tending to show that a defendant is guilty. Not having a motive may be a factor tending to show that a defendant it not guilty."
>
> During his closing argument, the prosecutor said:

28

"[T]his is done by a bunch of people who have no jobs, there's no testimony that any one of them have ever had in the history that they've known each other a steady job.

"What did [Kokko] say? 'Well, I think I've known [Jones] for about five years.' I think that's my recollection of the testimony; certainly a few years.

" 'And have you ever known them to hold a steady job?'"

" 'No, he does odd job[s] here and there. Mow the law for somebody, you know, steal.'"

One of the defendants' counsel objected and the court announced a recess, sending the jury out of the courtroom. It told counsel:

"It's improper generally to argue that because someone is unemployed he or she is a criminal or more likely to have committed a criminal act.

"In this case, initially Miss [Kokko] raised or brought before the jury the issue of her need for money with her testimony about renting her, or loaning her car out in exchange for $50 in the middle of the night to a stranger, and the District Attorney was permitted to follow-up with questions about her employment once she broached the issue.

"Mr. Koon—excuse me, Mr. Jones' employment has some relevance beyond just a general unfocused lack of employment, and that there's evidence that he's in the business of recycling metal, which has some direct relevance to this particular case, and the District Attorney was allowed to present further evidence that as far as the witness knew that's his only occupation.

"I don't see any particular relevance to Mr. Koon's lack of employment in the case, and it's probably improper to argue that as well as to [tell the] jury to draw the inference that

29

simply because people are unemployed they are
likely to have committed the crime. So I'm going
to sustain the objection.

"The District Attorney can comment on the
aspects of [Kokko's] employment or lack thereof
in connection with her testimony, and the
evidence regarding the nature of Mr. Jones' ...
employment but not on Mr. Koon's lack of
employment."

The court asked counsel how to handle the issue with the
jury. One of the other defendant's counsel said, "Well, my
first suggestion is it's too late. It's already out there
and my client is not getting a fair trial...." Counsel's
second suggestion was a curative instruction. The court
then proposed a curative instruction. None of the defense
counsel requested additional or other language than the
court proposed. As read to the jury, the instruction was
as follows:

"The objection to the prosecutor's argument is
sustained. The jury is to disregard any
suggestion by the argument of the prosecutor
that Miss [Kokko] testified that any of the
defendant's occupation was stealing. She did not
testify to that.

"Further, the jury may not infer just because
someone is unemployed he or she is a thief.
Evidence of Mr. Jones' history of being involved
in recycling metal may be considered by the
jury.

"Evidence of Miss [Kokko's] lack of employment
at the time of the alleged crime may be
considered by the jury along with all the other
evidence."

The jury found Koon and Kokko guilty of grand theft. The
charge of receiving stolen property, a lesser-included
offense, was dismissed. The charge of grand theft was
dismissed as to Jones and the jury found him not guilty of
receiving stolen property. After a bifurcated trial,
Koon's prior offense allegations were found true.

. . . .

DISCUSSION

Koon contends that the court should not have given the
jury the standard motive instruction because it allowed
the jury to infer from the evidence of his employment and
financial status that he had a motive for theft. He argues
that giving the instruction under these circumstances
contravened case law stating that evidence of poverty or
unemployment is inadmissible to prove a motive for theft.
(E.g., *People v. Koontz* (2002) 27 Cal.4th 1041, 1076.) He
joins the argument to the same effect made by Kokko on
appeal in *People v. Traci Ann Kokko*, case No. F056276.

In a criminal trial, the court must give an instruction
requested by a party if the instruction correctly states
the law and relates to a material question upon which
there is evidence substantial enough to merit
consideration by the jury. (*People v. Avena* (1996) 13
Cal.4th 394, 424; *People v. Wickersham* (1982) 32 Cal.3d
307, 324, overruled on other grounds by *People v. Barton*
(1995) 12 Cal.4th 186, 201.) The court must also give some
instructions sua sponte:

> [E]ven in the absence of a request, a trial
> court must instruct on the general principles of
> law governing the case, i.e., those principles
> relevant to the issues raised by the evidence,
> but need not instruct on specific points
> developed at trial. The most rational
> interpretation of the phrase general principles
> of law governing the case would seem to be as
> those principles of law commonly or closely and
> openly connected with the facts of the case
> before the court. [Citations.] (*People v.
> Michaels* (2002) 28 Cal.4th 486, 529–530.)

> The court is obligated not to instruct on
> principles of law that are irrelevant and will
> confuse the jury and relieve it from making
> necessary findings. (*People v. Satchell* (1971) 6
> Cal.3d 28, 33, fn. 10, overruled on other
> grounds by *People v. Flood* (1998) 18 Cal.4th
> 470.) The court has no duty to give an
> instruction if it is repetitious of another
> instruction the court gives. (*People v. Turner*
> (1994) 8 Cal.4th 137, 203, overruled on other
> grounds by *People v. Griffin* (2004) 33 Cal.4th

31

536, 555, fn. 5.) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248.)

We see no defect in the language of CALCRIM No. 370, and Koon concedes that the correctness of its language is not in dispute. Instead, he makes two other arguments. First, he asserts that the motive instruction should not have been given at all under the circumstances and no clarifying instruction could have undone the harm it caused. The court, however, explained why the instruction was applicable and how evidence of the defendants' financial and employment status could properly be considered: Jones's past involvement in metal recycling was relevant to whether he had a motive to take the ladders, and Kokko's lack of funds was relevant to her defense that she was motivated by Don's offer of $50 to allow her truck to be used. Koon, in fact, concedes that "there was some marginal relevance regarding the employment or unemployment of Ms. Kokko and Mr. Jones...." Evidence warranting the instruction being present, it was appropriate for the court to give it, provided the court warned the jury against improper application. That is just what the court did when it gave the curative instruction. There is no reason to think the jury was incapable of applying that instruction. We presume juries follow the court's instructions. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Koon's other argument is that the curative instruction was inadequate. Unlike the motive instruction, the curative instruction was not in writing, so the motive instruction "undoubtedly carried more weight." Further, though the curative instruction explained the relevance of Kokko's and Jones's employment and financial status, and said the jury could not infer that a defendant is a thief because he is unemployed, it did not expressly tell the jury not to consider Koon's unemployment as a motive. Koon perhaps withdraws this argument in his reply brief, saying his argument is only that the motive instruction should not have been given, not that the court failed to clarify it. We will address the argument anyway.

A more explicit curative instruction would have been a pinpoint instruction, i.e., one that relates particular facts to a legal issue in the case. A pinpoint instruction need be given only on request; a failure to give it absent objection or request is not a ground for reversal. (*People v. Saille* (1991) 54 Cal.3d 1103, 1120; *People v. Rogers* (2006) 39 Cal.4th 826, 878.) Koon did not object to the motive instruction or the curative instruction and did not request a different or additional instruction on the point. One of the other defense counsel made a "suggestion" that it was "too late" for a curative instruction, but Koon did not join in this suggestion, and no one suggested a different curative instruction. Koon's claim that the curative instruction was inadequate is therefore waived.

Instructional error is not waived by failure to object at trial if the error affected substantial rights of the defendant. (Pen.Code, § 1259.) Under the circumstances, however, we do not believe that Koon's substantial rights were affected by the court's omission of a pinpoint instruction explicitly stating that evidence of his lack of funds was not to be considered to prove he had a motive for theft.

Finally, Kokko's brief, which Koon incorporates in his brief by reference, argues that CALCRIM No. 370 is erroneous because it permits the jury to reach a verdict of guilty based on evidence of motive alone. Putting aside Koon's statement that he is not challenging the language of CALCRIM No. 370 (which would seem to constitute an abandonment of this argument), we do not see how the instruction permits any such thing. It states that motive need not be proved, but "may be a factor tending to show" guilt. It is undisputed that the jury was correctly instructed on the elements of grand theft. Taken together, the elements instruction and the motive instruction told the jury that grand theft has certain elements and that motive is not one of them, but that motive can help to establish guilt. We see no reason to think the jury would have misinterpreted these instructions to mean that if Koon had a motive, then Koon was guilty. This is especially implausible in light of the curative instruction.

(LD 4, 4-9.)

33

1          B.   Analysis

2          When a conviction is challenged in a proceeding pursuant to 28

3    U.S.C. § 2254 on the basis of error in jury instructions, two

4    clearly established legal principles govern a district court's

5    review.

6          First, the United States Supreme Court has held that a

7    challenge to a jury instruction based solely on an error under state

8    law does not state a claim cognizable in federal habeas corpus

9    proceedings.  Estelle v. McGuire, 502 U.S. at 71-72.  A claim that

10   an instruction was deficient in comparison to a state model or that

11   a trial judge incorrectly interpreted or applied state law governing

12   jury instructions does not entitle one to relief under § 2254, which

13   requires violation of the Constitution, laws, or treaties of the

14   United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).  Thus, this Court

15   will not undertake review of the California courts' interpretation

16   or application of the state law governing jury instructions.

17         Secondly, the only basis for federal collateral relief for

18   instructional error is that the infirm instruction or the lack of

19   instruction by itself so infected the entire trial that the

20   resulting conviction violates due process.  Estelle, 502 U.S. at 72;

21   Cupp v. Naughten, 414 U.S. 141, 147 (1973); see, Donnelly v.

22   DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be

23   established not merely that the instruction is undesirable,

24   erroneous or even "universally condemned," but that it violated some

25   right guaranteed to the defendant by the Fourteenth Amendment).

26         Further, the instruction may not be judged in artificial

27   isolation, but must be considered in the context of the instructions

28   as a whole and the trial record.  Estelle, 502 U.S. at 72.  In

34

reviewing an ambiguous instruction, it must be determined whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72-73 (reaffirming the standard as stated in Boyde v. California, 494 U.S. 370, 380 (1990)). The Court in Estelle emphasized that the Court had defined the category of infractions that violate fundamental fairness very narrowly, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. Id. at 72-73.

Moreover, even if there is instructional error, a petitioner is generally not entitled to habeas relief for such error unless it is prejudicial. The Supreme Court has held that harmless error analysis applies to instructional errors as long as the error at issue does not categorically vitiate all the jury's findings. Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)). In Hedgpeth v. Pulido, the Court cited its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element. Hedgpeth, 555 U.S. 60-61. To determine whether a petitioner pursuant to § 2254 suffered prejudice from such an instructional error, a federal court must determine whether a petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious

effect or influence in determining the jury's verdict.  <u>Hedgpeth</u>,

555 U.S. at 62; <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993).

Here, to the extent that Petitioner states a federal claim, the

state court's decision was not contrary to, or an unreasonable

application of, clearly established federal law within the meaning

of 28 U.S.C. 2254(d)(1).  The instruction regarding motive was

reasonably understood as relating to evidence concerning the co-

defendants.  It was not reasonably likely that the jury would

understand the instructions as a whole to permit conviction based on

motive alone because the jury was also instructed on the need to

prove all the elements of the substantive offense of theft as well

as the jury's ability to disregard any instruction applying to facts

determined by the jury not to exist.  (LD 14, 2 RT 247-49, 256, 261-

63.)  The limiting instruction may not have affirmatively mentioned

Petitioner, but the instructions as a whole fairly communicated the

prohibition against considering Petitioner's lack of employment as a

basis for his conviction.  Juries are presumed to follow a court's

limiting instructions with respect to the purposes for which

evidence is admitted except in extreme circumstances that render an

instruction insufficient to overcome prejudice.  <u>Aguilar v.

Alexander</u>, 125 F.3d 815, 820 (9th Cir. 1997).  Here, the state court

could reasonably have determined that the instruction did not infect

the entire trial with unfairness or violate Petitioner's right to

due process of law.  <u>Cf. Becerra v. Trimble</u>, no. cv 12-77-CAS (SH),

2012 WL 2341537, *6-*7 (C.D.Cal. May 1, 2012) (unpublished), adptd.

2012 WL 2341428 (C.D.Cal June 19, 2012).

Accordingly, Petitioner's claim of instructional error will be denied.

VII.  Insufficiency of the Evidence

Petitioner argues that the evidence was insufficient to support his conviction of grand theft.

A.  Procedural Default

Respondent argues that this claim should not be reviewed because Petitioner procedurally defaulted in state court by failing to raise this issue on appeal, and the CSC denied the subsequent habeas petition with citation of state law authorities to the effect that habeas corpus is not a proper vehicle for claims of the insufficiency of the evidence, and that habeas cannot substitute for appellate review of the sufficiency of the evidence.[3]  Respondent further contends that the procedural rules invoked by the California court were independent and adequate state grounds, Carter v. Giurbino, 385 F.3d 1194, 1197-98 (9th Cir. 2004) (Lindley); Protsman v. Pliler, 318 F. Supp.2d 1004, 1007-09 (S.D.Cal. 2004); see also Bennett v. Mueller, 322 F.3d 573, 582-83 (9th Cir. 2003); Sanchez v. Ryan, 392 F. Supp.2d 1136, 1138-39 (C.D. Cal. 2005).

The doctrine of procedural default is a specific application of the more general doctrine of independent state grounds.  It provides that when state court decision on a claim rests on a prisoner's violation of either a state procedural rule that bars adjudication of the case on the merits or a state substantive rule that is

---

[3] The citations were to In re Lindley, 29 Cal.2d 709 (1947) and In re Dixon, 41 Cal.2d 756 (1953).

dispositive of the case, and the state law ground is independent of the federal question and adequate to support the judgment such that direct review in the United States Supreme Court would be barred, then the prisoner may not raise the claim in federal habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. Walker v. Martin, - U.S. -, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d at 580; Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). The doctrine applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Here, even if Petitioner procedurally defaulted on his insufficiency of the evidence claim, the analysis of cause, prejudice, and miscarriage of justice is potentially more complex than if the court were to resolve the underlying issues on the merits. In a habeas case, it is not necessary that the issue of procedural bar be resolved if another issue is capable of being resolved against the petitioner. Lambrix v. Singletary, 520 U.S. 518, 525 (1997). Here, it makes more sense to proceed to the merits. See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

B.  Insufficiency of the Evidence

Where a state court did not reach the merits of a claim, federal habeas review is not subject to the deferential standard that applies under § 2254(d) to "any claim that was adjudicated on the merits in State court proceedings"; rather, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

38

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most favorable to the prosecution.  Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008.  It must be recognized that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).  Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v.

39

Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Petitioner appears to base his claim on what he characterizes as the absence of any evidence demonstrating that Petitioner was ever present at the victim's ranch, stole property from the ranch, or harbored the requisite intent to do so.  (Doc. 1, Exhibit; LD 9, 7.)

Under California law, grand theft or larceny is defined as the felonious taking and carrying away of the personal property of another with the intent to steal it and carry it away.  Cal. Pen. Code § 487(a); 2009-2010 Cal. Stats., 3rd Ex. Sess., c. 28, $ 17; People v. Williams, 58 Cal.4th 776, 788-89 (2013).

Here, at the scene of the taking, there were shoe prints that matched Petitioner's shoes and the tire tracks that matched the tires of Kokko's Blazer; further, there were pie boxes that tended to connect the Blazer and the site of the taking.  Further, Petitioner was found at the location where the ladders and tools taken in the theft had been carried.  This evidence was sufficient

40

to permit a rational trier of fact to infer that Petitioner was present and participated in the taking and carrying away of the ladders and tools.  The circumstances of the taking and the presence of the stolen items at the recycling site along with tools that were appropriate for dismantling a ladder permitted an inference that there was an intention to steal or permanently deprive the owner of his property.

In addition, Petitioner's girlfriend informed Deputy Sweeney that she saw Petitioner and Jones unloading the ladders, although she claimed not to recall having said that when she testified at trial.  Even if the girlfriend's testimony were in doubt, the other evidence was sufficient to support rational inferences that Petitioner was guilty of grand theft.

Accordingly, the Court will deny Petitioner's claim of the insufficiency of the evidence.

VIII.  <u>Petitioner's Motion for an Evidentiary Hearing</u>

On May 29, 2014, Petitioner filed a motion for an evidentiary hearing in connection with his motion for leave to amend the petition.  Petitioner refers to the determination of factual findings regarding cause and prejudice or the ineffective assistance of counsel.  Petitioner argues that he is entitled to an evidentiary hearing and discovery, and to the appointment of counsel if his motion is otherwise granted.  No opposition to the motion was filed.

It is unclear whether Petitioner is referring to an evidentiary hearing on his IAC claim, or rather to an evidentiary hearing regarding equitable tolling.

Generally, it is established in this circuit that a habeas petitioner should receive an evidentiary hearing when he makes a

good faith allegation that would, if true, entitle him to equitable tolling.  Roy v. Lampert, 465 F.3d at 969.

Here, as previously discussed, Petitioner's allegations that he was without counsel or that appointed appellate counsel provided ineffective assistance have been contradicted by the record. Petitioner has failed to allege any facts that would warrant a conclusion that counsel engaged in any misconduct that would constitute extraordinary circumstances.  Further, it does not appear that any conduct of counsel could have caused Petitioner's delay in raising his new claims.  Although Petitioner claimed that he suffered some limitations and generalized difficulties in the preparation of petitions, this Court's detailed analysis of the pertinent events shows that Petitioner engaged in lengthy delays, including protracted and unjustified delay after being informed by this Court that an IAC claim was unexhausted.

In summary, Petitioner has not alleged either diligence or facts showing extraordinary circumstances that were the cause of the delay.  It thus appears that Petitioner has not alleged facts that would entitle him to equitable tolling or to relief on his IAC claim.

In conclusion, the Court will deny Petitioner's motion for an evidentiary hearing.

IX.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336

42

1  (2003).  A district court must issue or deny a certificate of
2  appealability when it enters a final order adverse to the applicant.
3  Rule 11(a) of the Rules Governing Section 2254 Cases.

4      A certificate of appealability may issue only if the applicant
5  makes a substantial showing of the denial of a constitutional right.
6  § 2253(c)(2).  Under this standard, a petitioner must show that
7  reasonable jurists could debate whether the petition should have
8  been resolved in a different manner or that the issues presented
9  were adequate to deserve encouragement to proceed further.  <u>Miller-
10  El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S.
11  473, 484 (2000)).  A certificate should issue if the Petitioner
12  shows that jurists of reason would find it debatable whether: (1)
13  the petition states a valid claim of the denial of a constitutional
14  right, and (2) the district court was correct in any procedural
15  ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

16      In determining this issue, a court conducts an overview of the
17  claims in the habeas petition, generally assesses their merits, and
18  determines whether the resolution was debatable among jurists of
19  reason or wrong.  <u>Id.</u>  An applicant must show more than an absence
20  of frivolity or the existence of mere good faith; however, the
21  applicant need not show that the appeal will succeed.  <u>Miller-El v.
22  Cockrell</u>, 537 U.S. at 338.

23      Here, it does not appear that reasonable jurists could debate
24  whether the petition should have been resolved in a different
25  manner.  Petitioner has not made a substantial showing of the denial
26  of a constitutional right.

27      Accordingly, the Court will decline to issue a certificate of
28  appealability.

X.   Disposition

Accordingly, it is ORDERED that:

1) Petitioner's motion for leave to amend the petition is DENIED; and

2) Petitioner's motion for an evidentiary hearing is DENIED; and

3) The first amended petition for writ of habeas corpus is DENIED; and

4) The Clerk is DIRECTED to enter judgment for Respondent; and

5) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **July 18, 2014**              /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE